IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


PEGGY SANDERS,

      Plaintiff,

v.                                                                No. CIV 15-cv-01145 RB/LF

SMI-ABQ Assets, LLC dba
DANIELS FAMILY FUNERAL HOME,
FAIRVIEW MEMORIAL PARK LLC,
REV. N. DARNELL SMITH,

      Defendants.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' two motions to dismiss, the first filed on December 23, 2015 (Doc. 7), the second filed on February 23, 2016 (Doc. 28); Plaintiff's Memorandum in Opposition to the Defendant's Motion to Dismiss, which the Court construes as a motion to amend, filed on February 22, 2016 (Doc. 27); and Defendants' Motion to Strike Plaintiff's Third Amended Complaint and Jury Demand, filed on March 16, 2016 (Doc. 36). Having considered the submissions of counsel and relevant law, the Court will **DENY** Defendants' motion to dismiss, **GRANT** Plaintiff's motion to amend, **DENY AS MOOT** Defendants' motion to strike, and **REMAND** the matter to the Second Judicial District Court, Bernalillo County, New Mexico.

## I.  Procedural Background

This case arises out of a contract between Plaintiff and Defendant SMI-ABQ Assets, LLC d/b/a Daniels Family Funeral Service (SMI).[1] (*See* Doc. 1 at ¶ 7.) Plaintiff entered into a contract with Defendants SMI and Smith to purchase a specific casket and funeral services for her son. (Doc. 27, Second Am. Compl. (SAC) ¶¶ 14–15.) Plaintiff contends that Defendants substituted a different casket without her permission and overcharged her for the funeral. (*Id.* at ¶¶ 19–26.)

Plaintiff filed her complaint in state court alleging a variety of claims against Defendants SMI, Smith, and three other named[2] individuals—Paul E. Daniels, Lana R. Lambe, and Brian Warner— whom Plaintiff has since voluntarily dismissed from the suit. (*See* Doc. 1 at ¶ 1; Doc. 27 at 3.) Plaintiff filed a First Amended Complaint in state court, and Defendants removed the case to this Court on December 16, 2015, pursuant to 28 U.S.C. §§ 1441(a). (Doc. 1 at ¶ 5.) Complete diversity does not exist on the face of the First Amended Complaint, because the individual Defendants (Daniels, Lambe, Smith, and Warner) are listed as residents of New Mexico. (*See* Doc. 1, Ex. 1, First Am. Compl. (FAC) ¶¶ 7–9, 11.) Defendants contend, however, that diversity exists because Plaintiff fraudulently joined the individual Defendants. (Doc. 1 at ¶¶ 11, 17–21.)

Defendants filed a Motion to Dismiss and Supporting Memorandum, seeking dismissal of the individually named Defendants (Daniels, Lambe, Smith, and Warner) for a lack of personal jurisdiction, insufficient service of process, and failure to state a claim. (Doc. 7.) Plaintiff responded and voluntarily dismissed three of the Defendants: Daniels, Lambe, and Warner.[3] (Doc.

---

[1] Plaintiff incorrectly named the corporate Defendants "Daniels Family Funeral Home" and "The Daniel Co. d/b/a/ Fairview Memorial Park, LLC" in her First and Second Amended Complaints. Defendants clarify that the proper corporate Defendant is SMI-ABQ Assets, LLC d/b/a Daniels Family Funeral Service (SMI). (Doc. 1 at ¶7.) The Court will refer to the Daniels Family Funeral Service as Defendant SMI throughout this opinion.

[2] Plaintiff also named an unknown Defendant, "John Doe 1," in her First and Second Amended Complaints, but she dropped the name from the Third Amended Complaint.

[3] These Defendants were still referred to in Plaintiffs' Second Amended Complaint, leading to some confusion in Defendants' second motion to dismiss. (*See, e.g.*, SAC ¶ 60; Doc. 28 at 3 n.1.)

2

27 at 3.) Plaintiff also submitted a Second Amended Complaint, personally serving the remaining Defendants in accordance with Federal Rule of Civil Procedure 4. (*Id.* at 3–4.) The Second Amended Complaint also corrected the name of the Defendant SMI and added allegations and claims relevant to Defendant Smith in his individual capacity. (*See, e.g.*, SAC ¶¶ 4, 60, 69–75, 80, 82, 90–96.)

Defendants filed a second Motion to Dismiss and Supporting Memorandum seeking dismissal of all claims against the individual Defendants for failure to state a claim. (Doc. 28.) Plaintiff responded to the motion and also filed a Third Amended Complaint. (Docs. 30, 31.) Plaintiff's Third Amended Complaint deletes the names of the individual Defendants that she voluntarily dismissed and deletes one of the claims against Defendant Smith. (*See* TAC.) Defendants replied to both Plaintiff's responses and her filing of the Second and Third Amended Complaints, asking the Court to disregard the amended complaints and rule only on the basis of the First Amended Complaint. (*See* Docs. 32, 34.)

## II.   Statement of Facts[4]

Plaintiff's son, Mr. Gordon Sanders, died on September 25, 2014. (SAC ¶ 12.) Plaintiff contacted Defendant SMI, doing business as Daniels Family Funeral Home, to arrange funeral services. (*Id.* at ¶¶ 4, 13.) Defendant Smith, a licensed funeral director, was one of Defendant SMI's employees. (*Id.* at ¶ 5.) Defendant Smith was also the pastor of Plaintiff's home church, Macedonia Baptist Church. (*Id.* at ¶¶ 2, 6.)

Plaintiff entered into a contract on September 26, 2014 with Defendants to purchase an Aegean Bronze model casket for approximately $6,600. (*Id.* at ¶¶ 13, 15.) Defendant Smith and

---

[4] The facts in this section are taken from Plaintiff's Second Amended Complaint. (Doc. 27, Second Am. Compl. (SAC).)

another funeral home employee later told Plaintiff that her son would require an oversized casket.
(*Id.* at ¶ 16.) Plaintiff contends that an oversized casket was unnecessary, but she was easily preyed
upon in her state of grief. (*Id.* at ¶¶ 35–36.) The parties signed a new contract on September 29,
2014, backdated to September 26. (*Id.* at ¶ 17.) Plaintiff never saw a price list for the oversized
models, and she was unaware that the oversized casket was not the same Aegean Bronze model
that she'd ordered previously; instead, the oversized casket was an Oversized Sand model, one of
lower quality and a different color. (*Id.* at ¶¶ 19–21, 33.) Plaintiff contends that Defendant Smith
led her to believe that the two caskets were the same, and she only became aware of the differences
when she saw her son in the new casket on the day of the funeral. (*Id.* at ¶¶ 19–20.)

Plaintiff complained to Defendant Smith about the casket on the day of the funeral, not
only because the model was different, but also because the model received appeared to be
damaged; regardless, she continued with the funeral services as planned. (*Id.* at ¶¶ 26, 30–31.) On
October 6, 2014, Plaintiff requested and received a list of the fees she had paid for the funeral
services. (*Id.* at ¶ 27; *see also* SAC, Exs. A, B.) The list Defendants gave her on October 6 was
different from the estimate of expenses they gave her when she initially contacted the funeral home
about services. (*Id.* at ¶ 27.) Plaintiff contends that Defendant Smith lied and attempted to defraud
Plaintiff by overcharging her for certain fees and attempting to conceal such fees. (*Id.* at ¶¶ 22–24,
29, 38, 41.) Plaintiff had relied upon Defendant Smith's advice, because she believed he advised
her in his fiduciary capacity as her minister. (*Id.* at ¶ 32.) Defendants later gave Plaintiff a $2,000
"discount" and a $375 "refund." (*Id.* at ¶¶ 28, 38.)

## III.    Legal Standards

### A.        Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

### B.        Motion to Amend Standard

Rule 15 allows a party to amend its pleading once as a matter of course in limited circumstances. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading with "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 directs that leave shall be freely given "when justice so requires." *Id.* "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) (internal citation omitted)). A court may deny a motion for leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)) (citations omitted)).

### C.     Law Regarding Removal

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction—meaning, most commonly, federal-question or diversity jurisdiction—the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" *McDaniel v. Loya*, 304 F.R.D. 617, 623 (D.N.M. 2015) (quoting 28 U.S.C. § 1441(a); (citations omitted)). "To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied." *Id.* at 624. "Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00." *Id.* (citing 28 U.S.C. § 1332(a); *Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000)). "Diversity between the parties must be complete." *Id.* (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (internal citation omitted)). A case may not "be removed if it began with a nondiverse party . . . and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, *see DeBry v. Transamerica Corp.*, 601 F.2d 480, 488 (10th Cir. 1979) (citation omitted) . . . or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined . . . ." *Id.* at 625.

"Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome." *Id.* (citing *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citations omitted)). "The defendant seeking removal" has the burden to establish that removal "is proper 'by a preponderance of the evidence.'" *Id.* (quoting *McPhail v. Deere & Co.*, 529 F.3d at 953 (10th Cir. 2008) (citations omitted)); *see also Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (internal citation omitted).

6

"All doubts are to be resolved against removal." *Id.* (quoting *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982) (internal citation omitted)).

**D.      Law Regarding Fraudulent Joinder**

"A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction." *McDaniel*, 304 F.R.D. at 626 (citing *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (citations omitted)). "[A] fraudulent joinder analysis [is] a jurisdictional inquiry," *id.* at 627 (quoting *Bio–Tec Envtl., LLC v. Adams*, 792 F. Supp. 2d 1208, 1214 (D.N.M. 2011) (quoting *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004)), "and, thus, the Tenth Circuit instructs that the district court should 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available,'" *id.* (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (internal citations omitted)). There must be evidence that the plaintiff joined the non-diverse party "without right" and "in bad faith." *Id.* (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (internal citations omitted)).

The burden of proof rests heavy on the party asserting fraudulent joinder to show that joinder is improper. *Id.* (citing *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000)). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." *Id.* (quoting *Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1146–47 (D.N.M. 1999) (internal citation omitted)). The party may demonstrate joinder is improper by showing: (1) actual fraud; (2) there is no cause of action stated against the resident defendant; or (3) "there is no possibility" the plaintiff can "establish a cause of action against" the non-diverse party. *Id.* at 627–28 (citing

*McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956); *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); *Montano*, 211 F.3d 1278, 2000 WL 525592, at *1 (internal citation omitted)). "The . . . standard for proving fraudulent joinder 'is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced.'" *Id.* at 628 (quoting *Montano*, 211 F.3d 1278, 2000 WL 525592, at *2 (internal citation omitted)). The Tenth Circuit has also held that "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Id.* (quoting *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (internal citation omitted)).

## IV.   Discussion

### A.   The Court will allow the Plaintiff's Second Amended Complaint.

Defendants argue in their reply that Plaintiff's Second and Third Amended Complaints should be disregarded because Plaintiff misstated facts, filed the amended complaints erroneously and without permission, and filed the Third Amended Complaint after the deadline to amend the pleadings had passed. (Doc. 32 at 2–6.) There is language in Plaintiff's response to Defendants' first motion to dismiss, however, which the Court construes as a motion to amend. (Doc. 27 at 3 ("The Plaintiff asks the Court to immediately file its Second Amended Complaint into the Court record in this case.") Plaintiff filed the Second Amended Complaint prior to the deadline of March 10, 2016, set in the Order Setting Case Management Deadlines and Discovery Parameters. (Doc. 19 at 2.)

To allow the case to proceed on the merits in compliance with Tenth Circuit authority, the Court is inclined to grant Plaintiff's motion and allow the Second Amended Complaint to stand,

unless Defendants can demonstrate that allowing the amendment is improper due to "undue delay, bad faith or dilatory motive[,]" "repeated failure to cure deficiencies[,]" "undue prejudice[,]" or "futility . . . ." *Minter*, 451 F.3d at 1204 (citations omitted). The only evidence of any of these factors is that Plaintiff allegedly misstated facts and the record in her opposition brief, presumably in bad faith. (Doc. 32 at 5.) The Court does not find that these errors or misstatements are sufficient to disregard the Second Amended Complaint.

This matter has been pending for less than one year. (*See* Doc. 1.) The parties have engaged in relatively little discovery, and allowing the Second Amended Complaint would not cause undue delay. *See Minter*, 451 F.3d at 1204 (citations omitted). Plaintiff has not repeatedly failed to cure deficiencies, nor do Defendants argue that allowing the amended complaint would cause undue prejudice. *See id.* (citations omitted). The Court does not find that the amendments are futile. *See id.* (citations omitted). Consequently, despite Plaintiff's failure to file a separate motion, the Court will grant Plaintiff's request and allow the Second Amended Complaint to stand. Defendants' request to disregard Plaintiff's Second Amended Complaint is denied. (*See* Doc. 32.)

**B.      Defendants' claim for insufficient service of process is moot.**

Defendants argued in their original motion to dismiss that Plaintiff's claims against Defendants Daniels, Smith, and Warner should be dismissed due to insufficient service of process. (Doc. 7 at 3–7.) Defendants acknowledged that Plaintiff correctly served Defendant Smith after the case was removed to federal court. (Doc. 28 at 3–4.) Because Plaintiff has voluntarily dismissed the remaining individual Defendants (Daniels, Lambe, and Warner), Defendants' argument based on insufficiency of process is moot and will be denied. (*See id.*)

**C.     The Court finds that Defendants have not met their burden regarding the issue of fraudulent joinder.**

Defendants argue in both of their motions to dismiss that Plaintiff fraudulently joined Defendant Smith to destroy diversity. (Docs. 7 at 7–10; 28 at 4–7.) Specifically, Defendants argue that Plaintiff's only claim against Defendant Smith is brought in his capacity as an agent or employee of Defendant SMI. (Docs. 7 at 8; 28 at 5–6.) Because Defendant SMI will be liable under a doctrine of respondeat superior, Defendants argue, Defendant Smith will not be individually liable for any of the claims and should be dismissed. (Docs. 7 at 8–9; 28 at 7.) As Defendants requested that the Court disregard Plaintiff's Second and Third Amended Complaints, they did not mention the addition of the allegations and claims in Plaintiff's amended pleadings. (*See* Docs. 28, 32, 34.) In Plaintiff's Second Amended Complaint, she adds an allegation that Defendant Smith is "individually liable" for his actions, a claim for conversion, and a claim for "breach of fiduciary duty." (SAC ¶¶ 60, 69–75, 90–96.) Plaintiff also inserted language about Defendant Smith into her claim of unfair trade practices. (*Id.* at ¶¶ 80, 82.)

The issue for the Court to consider is whether there is a reasonable basis to believe Plaintiff might succeed in at least one claim against Defendant Smith. *See Nerad*, 203 F. App'x at 913 (citation omitted). Defendants offer no authority to meet their heavy burden of showing that Plaintiff cannot succeed on her claims and that Defendant Smith has been fraudulently joined. *See McDaniel*, 304 F.R.D. at 627 (citing *Montano*, 211 F.3d 1278, 2000 WL 525592, at *1). Plaintiff names Defendant Smith in four claims: misrepresentation, conversion, unfair trade practices, and breach of fiduciary duty. (SAC ¶¶ 60, 69–75, 80, 82, 90–96.) The Court examines two of these claims—conversion and misrepresentation—for purposes of this issue.

"The elements of the tort of conversion by demand and refusal are: (1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to plaintiff; and (3) that the defendant refused to return the property to plaintiff." *Nosker v. Trinity Land Co.*, 757 P.2d 803, 808 (N.M. Ct. App. 1988) (citing Restatement (Second) of Torts § 237 (Am. Law Inst. 1965); 1 F. Harper, F. James & O. Gray, *The Law of Torts* § 2.27 (2d ed. 1986)). Plaintiff alleges that Defendant Smith converted part of the fees she gave to the funeral home for his own personal use, and that while he did offer her a "refund" for $375, he may have converted other money she does not know about. (SAC ¶¶ 70–71.) Defendants contend that Plaintiff's complaint does not contain a cause of action against Defendant Smith for his individual conduct. (Doc. 7 at 10.) Conversion is a claim for Defendant Smith's individual conduct in his individual capacity, and plaintiff's allegations offer a reasonable basis for recovery under New Mexico law for conversion, regardless of whether Defendant SMI can also be held liable under a theory of respondeat superior.

The elements of fraudulent misrepresentation are: "(i) a misrepresentation of fact; (ii) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation; (iii) intent to deceive and to induce reliance on the misrepresentation; and (iv) detrimental reliance on the misrepresentation." *Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1344–45 (D.N.M. 2009) (citing *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1200 (D.N.M.) (citing *Williams v. Stewart*, 112 P.3d 281, 290 (N.M. Ct. App. 2005))); *see also* Restatement (Second) of Torts §§ 525–26 (Am. Law Inst. 1977). Plaintiff alleges that Defendant Smith knowingly misrepresented the model of casket she would receive with the intent to deceive Plaintiff, and Plaintiff relied on the misrepresentation. (SAC ¶¶ 58–67.) These

allegations demonstrate the possibility that Plaintiff is entitled to relief from Defendant Smith. *See Montano*, 211 F.3d 1278, 2000 WL 525592, at *4–5 (citation omitted).

Plaintiff can make out a claim "against the non-diverse defendant" as a tortfeasor. *Nerad*, 203 F. App'x at 913 (citation omitted). In addition, it is possible that Plaintiff may recover damages from both Defendants. Fraudulent misrepresentation and conversion are both torts under New Mexico law. *See* Restatement (Second) of Torts §§ 237, 525–26. Under New Mexico law, "a principal is liable for compensatory damages arising out of the tortious act of an employee acting within the scope of his authority . . . ; but the principal is not liable for punitive damages for the same act, unless it is proved, over and above the fact that the agent was acting within the scope of his authority, that the principal participated in, authorized, or ratified the actual tortious conduct of the agent. *Sanchez v. Sec. Acceptance Corp.*, 260 P.2d 703, 706–07 (N.M. 1953). By this authority, then, Defendant Smith may at least be liable for punitive damages for any tortious act that Plaintiff can prove he committed. *Id.* Plaintiff has requested punitive damages in her complaint. (SAC ¶ 100.)

Defendants have brought forward no evidence or argument to show that Plaintiff named Defendant Smith "without right" or "in bad faith." *McDaniel*, 304 F.R.D. at 627 (citation omitted). Further, the allegations in Plaintiff's complaint show that there is a reasonable basis that she will succeed on at least one claim against Defendant Smith. *See Nerad*, 203 F. App'x at 913 (citation omitted). Consequently, Defendant Smith is a proper defendant and Defendants have not established that he was fraudulently joined. Even if the Court were limited to the First Amended Complaint, Plaintiff had alleged facts sufficient to hold Defendant Smith liable in his individual capacity, at the very least for punitive damages. (*See* FAC ¶¶ 82–83, 92–93, 114.) Because Defendant Smith is a proper non-diverse party, diversity jurisdiction does not exist. *McDaniel*, 304

F.R.D. at 626 (citations omitted). Defendants' motions are denied, and it follows that this Court must remand the instant case to state court.

      **D.**    **The Court denies Defendants' request for attorney fees, sanctions, and oral argument.**

Defendants seek an award of attorneys' fees as a sanction for Plaintiff's alleged misstatement of facts and failure to adhere to the Court's rules in filing a motion to amend. (Doc. 32 at 8.) Defendants "do not assert under what authority the Court should impose sanctions and shift fees." *Rivera v. DJO, LLC*, No. CIV 11-1119 JB/RHS, 2012 WL 2175751, at \*6 (D.N.M. June 5, 2012). The Court construes the request as one for sanctions pursuant to Federal Rule of Civil Procedure 11.

Defendants moved for sanctions and attorney fees in their reply. (*See* Doc. 32.) Defendants have not complied with the requirements of Rule 11, which require the party moving for sanctions to make such a motion "separately from any other motion . . . ." *Id.* (quoting Fed. R. Civ. P. 11(c)(2)). Additionally, Rule 11(c)(2) contains a safe harbor provision: Defendants must serve the motion "under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* (quoting Fed. R. Civ. P. 11(c)(2)). Defendants did not comply with Rule 11's safe harbor provision, as they filed their reply and request for sanctions less than 21 days after Plaintiff filed her Second Amended Complaint. (*See* Docs. 27, 32.) Accordingly, the Court will deny Defendants' request for sanctions and attorney's fees.

Defendants also request that the Court set a hearing for oral arguments regarding their motions. (Doc. 32 at 9.) Pursuant to local rules, "a motion will be decided on the briefs unless the Court sets oral argument." D.N.M. LR-Civ. 7.6(a). After examining the briefs, the Court finds that

oral argument is not necessary for the determination of the matters in Defendants' motions. Consequently, the Court denies Defendants' request for oral argument.

      **E.**    **The Court denies Defendants' motion to strike as moot.**

Defendants filed a Motion to Strike Plaintiff's Third Amended Complaint and Jury Demand, arguing that the amended complaint was filed in violation of the Court's scheduling order (Doc. 19), Federal Rule of Civil Procedure 15(a)(2), and D.N.M. LR-Civ. 15.1. (Doc. 36 at 1.) The Court did not consider Plaintiff's Third Amended Complaint in this opinion. Because the Court finds that Defendants' motions to dismiss should be denied and the matter remanded to state court, Defendants' motion to strike is denied as moot.

      **THEREFORE,**

      **IT IS ORDERED** that Defendants' motions to dismiss (Docs. 7, 28) are **DENIED**;

      **IT IS FURTHER ORDERED** that Defendants' requests for sanctions, attorney fees, and oral argument are **DENIED**;

      **IT IS FURTHER ORDERED** that Plaintiff's Memorandum in Opposition to the Defendant's Motion to Dismiss (Doc. 27), which the Court construes as a motion to amend, is **GRANTED**;

      **IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Third Amended Complaint and Jury Demand is **DENIED AS MOOT**;

      **IT IS FURTHER ORDERED** the Clerk of the Court is directed to take the necessary action to cause this case to be remanded to state court.

                                      _____
                                      **ROBERT C. BRACK**
                                      **UNITED STATES DISTRICT JUDGE**